FILED
Mar 18, 2022
11:24 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Jo Carol Edwards ) | Docket No. 2020-07-0656 |
| ) | |
| v. ) | State File No. 53020-2020 |
| ) | |
| PeopLease, LLC, et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Allen Phillips, Judge ) | |

---

### Affirmed in Part, Reversed in Part, and Remanded

---

In this interlocutory appeal, the employee reported suffering various injuries as a result of a truck accident. The employer provided workers' compensation benefits, including a panel of orthopedic surgeons from which the employee selected an authorized physician. The authorized physician opined, in part, that the employee had severe arthritis in both knees necessitating total knee replacements but did not believe the accident was the primary cause of the need for the knee replacement surgeries. The employee sought unauthorized treatment with another physician who attributed more than fifty percent of the cause of the need for bilateral knee surgeries to the accident. Following an expedited hearing, the trial court determined the employee would likely prevail at trial in proving the need for bilateral total knee replacements arose primarily from the work accident. The court ordered the employer to pay the medical expenses for the employee's left knee replacement that had already been performed and to provide ongoing medical care, including a right knee replacement as recommended by the employee's physician. The court additionally awarded the employee temporary disability benefits and reimbursement for mileage expenses incurred for her travel to obtain medical care. The employer has appealed. We affirm the trial court's decision to the extent it orders the employer to provide reasonable and necessary medical benefits causally related to the work accident. However, we reverse the trial court's finding that the employee has shown she is likely to prevail at trial in establishing that her need for bilateral knee replacements arose primarily out of the work accident, and we remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge David F. Hensley joined.

Stephen B. Morton, Nashville, Tennessee, for the employer-appellant, PeopLease, LLC

Charles L. Hicks, Camden, Tennessee, for the employee-appellee, Jo Carol Edwards

Art D. Wells, Jackson, Tennessee, for the Tennessee Subsequent Injury and Vocational Recovery Fund

**Factual and Procedural History**

On August 14, 2020, Jo Carol Edwards ("Employee"), a truck driver, was employed by PeopLease, LLC ("Employer") to drive a tractor trailer for French Trucking. While driving in Mississippi, the truck's right front tire blew out, causing the truck to strike a bridge before traveling down an embankment and coming to a stop in a field. Employee was transported to the University of Mississippi Medical Center where she reported "neck pain, chest pain, bilateral knee pain, [and] sacral pain." Examination revealed bilateral anterior patella tenderness and bilateral pain to the right and left knees with passive range of motion upon flexion but "no swelling deformity or signs of injury." A CT of Employee's cervical spine and head revealed no acute abnormalities. X-rays of Employee's right knee revealed "degenerative joint disease with no acute abnormality," and x-rays of her left knee showed "tricompartmental degenerative joint disease with trace joint effusion" but "[n]o acute fractures." Employee was prescribed pain medications and advised to follow up with her primary care physician.

Employee next treated on August 20, 2020, at Fast Pace Urgent Care Clinic where she received a referral for an orthopedic evaluation.[1] Employer provided a panel of orthopedic physicians, and Employee selected Dr. Jason Hutchison to be her treating physician. Employee first saw Dr. Hutchison on September 14, 2020, reporting bilateral knee pain following the work-related truck accident. Employee described her pain as a "constant aching, burning, and throbbing sensation," noting that her left knee was worse than her right knee. Dr. Hutchison documented tenderness along the medial joint line, with no instability and normal tracking of the patella for both knees. X-rays revealed bilateral tricompartmental end-stage arthritis. Dr. Hutchison administered an injection and advised Employee that "her injury is only an aggravation of her underlying arthritis." He concluded that Employee's work-related injury was "not responsible for greater than 51% of the [Employee's] current problem," and he placed her at maximum medical improvement. Dr. Hutchison returned Employee to work without restrictions and noted she could return to see him as needed.

Employee returned to Fast Pace Urgent Care Clinic on September 21, 2020, and was seen by Jacqueline Wilson, a family nurse practitioner. Triage notes indicate Employee stated she was there for lab work, to discuss medications, and that she needed "a referral for orthopedics for [her] bilateral knee replacement." Employee provided a

---

[1] This medical record is not contained in the record on appeal. We have gleaned this information from Employee's testimony at the expedited hearing, medical bills admitted in evidence, and the parties' briefs.

2

history of joint pain in "the lateral aspect of the left knee, medial aspect of the left knee, lateral aspect of the right knee, and medial aspect of the right knee," describing the pain as "sharp, dull, and aching." Employee stated she had been "seen with workmans [sic] comp and evaluated, [and] she was told she will need both knees replaced." Employee requested and received a referral to Dr. Timothy Sweo in Jackson, Tennessee.[2]

On September 24, 2020, Employee was evaluated by Dr. Sweo, who recorded a history of constant pain, swelling and stiffness of both knees. She described her symptoms as "mild-moderate" with "aching, sharp and throbbing" pain. X-rays revealed severe bilateral knee arthritis, and Dr. Sweo noted Employee had severe pain, "left greater than right" following conservative treatment. He discussed a left total knee replacement and recorded that Employee "does wish to proceed."

On October 19, 2020, Dr. Hutchison prepared an office note concerning an impairment rating for Employee. He summarized the history provided by Employee, his diagnosis, and his causation opinion before addressing Employee's impairment rating:

> Based on the absence of causation to the underlying severe tricompartmental arthritis, I do not think [Employee] has any underlying impairment that is specifically caused by the accident, and therefore, [Employee] is released to [follow up] under [her] private medical with appropriate treatments for osteoarthritis and potential knee replacement recommended. Based upon this, there is no impairment per the AMA [G]uideline, 6th Edition of [Permanent] Impairment. [Employee] may [follow up] with me or [her] orthopedist of choice p.r.n.

Employee returned to Dr. Sweo on November 17, 2020, with complaints of continued bilateral knee pain. Dr. Sweo reported Employee was "adamant" that she had no problems with her knees prior to the work accident. He noted Employee "may have some ligamentous damage or nondisplaced fractures" and requested an MRI, which revealed severe arthritis throughout Employee's left knee and an avulsion fracture of her posterior tibial plateau. On December 3, 2020, Dr. Sweo noted it "appears [an] acute fracture destabilized her knee causing the arthritis to hurt. So the accident was the main cause of her needing a knee replacement." Dr. Sweo also documented the injury to be "greater than 51% of the cause for her knee replacement."

Employee filed a petition for workers' compensation benefits, asserting her claim had been denied and that she needed medical treatment and "legal benefits." Employee

---

[2] After her appointment with Dr. Hutchison, Employee returned to French Trucking and spoke with Vickie French. Employee testified that "Vickie French told me that she goes to Dr. Sweo, [that] her family goes to Dr. Sweo . . . so she gave me Dr. Sweo's name and number." Employee stated that Ms. French recommended that she see Dr. Sweo. It is undisputed, however, that Employee's treatment with Dr. Sweo was not authorized by Employer or its insurer.

indicated in her petition that she had selected Dr. Jason Hutchison from a list of three doctors on August 25, 2020, and she alleged she was denied additional reasonable and necessary medical care for her work injury after receiving some initial treatment.

On December 31, 2020, Dr. Sweo drafted correspondence stating that Employee was under his medical care and currently unable to return to work. He noted Employee had been off work since September 24, 2020, and was scheduled to undergo knee replacement surgery on January 11, 2021, with an expected recovery period of three months. Dr. Sweo performed a left total knee replacement on February 8, 2021.[3] On May 4, at a follow-up visit with Dr. Sweo, Employee indicated that her left knee was improving, but the pain was more noticeable in her right knee. Employee expressed her desire to proceed with a right total knee replacement during this visit. Dr. Sweo recommended that Employee wait to ensure her left joint was doing better before proceeding. Following the May 4 visit, Dr. Sweo drafted a letter stating that Employee was still recovering from her knee replacement, would "likely need one on her right knee also," and was still unable to return to work.

At a December 14, 2021 expedited hearing, Employee requested payment of medical bills for her left knee replacement, authorization for a right knee replacement, evaluation of alleged chest and right foot injuries, payment of additional temporary disability benefits, and reimbursement of expenses for her travel to obtain medical care. Employer argued it did not deny Employee's claim and should only be responsible for reasonable and necessary treatment for the aggravation of Employee's pre-existing arthritic condition resulting from the work accident. Employer additionally contended that the need for Employee's bilateral knee replacements was not more than 50% caused by the August 2020 work-related accident, relying on the causation opinion of the authorized panel physician for support of this position.

Employee testified in person at the expedited hearing, where she described being "jarred up and down, sideways, [and] front[ward]" during the accident and having her knees "smashed against the dash several times." In addition, Employee testified that she had not experienced pain in either knee prior to the accident but experienced pain, swelling, and difficulty walking following the accident. The court determined Employee was credible, observed her limping and using a cane, and concluded "her complaints align with those Dr. Hutchison said he would expect from someone whose arthritis is made symptomatic."

Dr. Hutchison and Dr. Sweo testified by deposition. The court noted that Dr. Hutchison was the panel-selected physician whose causation opinions are entitled to a rebuttable presumption of correctness as provided by Tennessee Code Annotated section

---

[3] Dr. Sweo also noted that Employee's accident resulted in injuries to her ribs, sternum, ankle, and tailbone. However, no treatment was recommended for those injuries.

4

50-6-102(14)(E) (2021).[4]  However, the court pointed to Dr. Hutchison's testimony that an exacerbation of a pre-existing injury is not compensable as being an "incorrect assumption."  In doing so, the court compared the facts of this case with those in *Blevins v. Southern Champion Tray, LP*, No. 2018-01-0673, 2019 TN Wrk. Comp. App. Bd. LEXIS 29 (Tenn. Workers' Comp. App. Bd. July 11, 2019), and concluded that, as in *Blevins*, Dr. Hutchison's opinion was inconsistent with the facts, as he did not consider whether Employee's pain caused by the accident had become disabling.  In addition, the court noted that Dr. Sweo opined that Employee's knee injuries and need for treatment were more than 51% related to the accident.  When coupled with the testimony of Employee, the court found Dr. Sweo's opinion to be more compelling and sufficient to rebut the presumption accorded to Dr. Hutchison's causation opinion.  Accordingly, the court ordered Employer to pay medical bills related to Employee's left knee replacement, to authorize surgery for the right knee replacement, to pay past and ongoing temporary total disability benefits, and to pay mileage reimbursement.  Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021).  When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009).  However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018).  Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013).  We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer.  Tenn. Code Ann. § 50-6-116 (2021).

## Analysis

Employer identified two issues on appeal, which we restate as follows: (1) whether the trial court erred in assessing the respective weight afforded to the opinions of each medical expert and in concluding Employee had met her burden of proof to rebut

---

[4] In its order, the trial court referenced Tennessee Code Annotated section 50-6-204(k)(7).  However, that section provides a presumption of correctness to the authorized physician's impairment rating.  The presumption of correctness attributable to an authorized physician's causation opinion is found in Tennessee Code Annotated section 50-6-102(14)(E).

the causation opinion of Dr. Hutchison and establish her entitlement to additional unauthorized medical care and temporary benefits; and (2) whether the trial court erred in concluding Employee was justified in seeking unauthorized medical treatment and ordering Employer to pay for past unauthorized medical expenses.[5]

When an employee reports a work injury, the employer is required to "designate a group of three (3) or more independent reputable physicians . . . from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2021). The opinion of the physician selected from the panel is "presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E). In addressing the level of proof required to overcome a trial court's factual determinations, we previously explained that "[t]he appellant bears the burden of showing that the evidence presented in the trial court preponderates against the trial court's findings. For the evidence to preponderate against a trial court's finding of fact, it must support another [finding] of fact with greater convincing effect." *Kirk v. Amazon.com, Inc.*, No. 2015-01-0036, 2015 TN Wrk. Comp. App. Bd LEXIS 44, at *19 (Tenn. Workers' Comp. App. Bd. Nov. 16, 2015). Moreover, when faced with competing expert medical opinions, a trial judge "has the discretion to conclude that the opinion of one expert should be accepted over that of another expert." *Regan v. Tennplasco*, No. M2005-0202-WC-R3-CV, 2006 Tenn. LEXIS 1209, at *10 (Tenn. Workers' Comp. Panel Dec. 27, 2006). However, when the medical proof is limited to documentary evidence, we are in just as good a position to review and analyze the evidence as the trial court and, therefore, need not afford a presumption of correctness to the trial court's conclusions based on documentary evidence. *See Goodman*, 2018 Tenn. LEXIS 8, at *6.

Employee selected Dr. Hutchison as her authorized physician. Dr. Hutchison is an orthopedic surgeon, board certified in both sports medicine and orthopedic surgery, with a significant portion of his practice involving knee treatment and surgery. Dr. Hutchison testified that he regularly treats patients with arthritis and individuals who sustained traumatic injuries to their knees, such as motor vehicle accidents. He first saw Employee approximately one month after the work incident and provided a diagnosis of "end stage tricompartment arthritis in both knees." He testified that Employee's knees had "bone on bone arthritis," stating "the cartilage is gone, and you've got bone against bone." Dr. Hutchison acknowledged that patients with end stage arthritis could potentially have numerous symptoms that he identified as follows:

---

[5] Employee raises as an issue her assertion that the trial court did not err in finding she suffered a compensable aggravation of a pre-existing condition. Although Employer does not dispute this particular finding, we note that at an expedited hearing, it is premature to address the compensability of Employee's claim and decline to do so.

Pain. Trouble standing for lengths of time. Swelling. Loss of range of motion. Aching. Trouble sleeping at night. Startup pain, meaning after they've been seated for awhile, they have trouble getting up and walking initially for the first few steps. Going up and down stairs is difficult. Squatting is difficult.

Dr. Hutchison noted Employee presented with pain in both knees, "some loss of range of motion, [and] tenderness along the joint lines." He acknowledged this "could have been related to the accident," but when asked to provide an opinion as to causation, Dr. Hutchison testified:

I determined that her primary pathology is end stage tricompartmental arthritis of both knees and that that particular finding was not work related or injury related, that she had an exacerbation of symptoms caused by the accident, and, that is not, according to my understanding of the law, compensable or something that should be considered for treatment under Workers' Compensation.

Dr. Hutchison gave Employee an injection that he testified was reasonable and necessary treatment for Employee's knee pain, and further clarified that,

in essence, when someone comes in, I have authorization to treat them for that day. And, again, keep in mind, I treat people all day long who aren't involved in Workers' Compensation and that happens to people all the time. Someone on their farm trips and falls, you know, taking care of their cows and come in with their knee hurting. They have an end stage arthritic knee that's hurting from the accident where they fell. What's the treatment for it? I inject their knee, and try to calm them back down to the baseline, because presumably they were doing pretty good before this and that's their treatment. And, even though I determined that their underlying arthritis is not work related, I always try to treat the patient in the same manner that I would if they were not Workers' Comp, which is what I did in this setting.

Based upon his evaluation of Employee, the imaging obtained, and the history provided by Employee, Dr. Hutchison concluded Employee's knee condition and need for total knee replacements was not greater than fifty percent related to the August 2020 incident.

When Employee saw Dr. Hutchison on January 4, 2021, he observed Employee using a cane and noted her continued pain, "particularly inner lateral pain." During this visit, Dr. Hutchison reviewed the December 3, 2020 MRI ordered by Dr. Sweo. Dr. Hutchison testified that the MRI revealed, in part, a subacute mildly displaced fracture to the posterior medial tibial plateau and characterized this as "an osteophyte, which is a bone spur off the back of the knee that had fractured." Dr. Hutchison acknowledged this

can sometimes happen when people have trauma but emphasized that "we're talking a very small bone spur, 14 by 9 millimeters. And the fact that it fractured, doesn't change the treatment at all . . . doesn't change, in my opinion, it's fairly nonconsequential to the big picture of this lady having an arthritic knee." Dr. Hutchison testified there is "no treatment" for this type of "nonconsequential" condition and stated, "[y]ou just leave it alone. I mean, it is not any – it doesn't change anything with regard to the treatment, prognosis, [or] diagnosis [of Employee's knees]."

Dr. Hutchison was asked specifically about a February 2, 2021 medical note from Dr. Sweo in which Dr. Sweo noted Employee "denies any previous culture of that knee with particular [motor vehicle accident]. So [it] appears [to] be acute fracture destabili[zing] her knee, causing the arthritis to hurt. So the accident was the main cause of her needing a knee replacement." Addressing Dr. Sweo's report, Dr. Hutchison stated:

> I 100 percent disagree with what [Dr. Sweo] says there. [Dr. Sweo's] treatment is correct. It's silly to talk about going in there and repairing this tiny little 8 ball fragment, in this setting. But, to say she's having knee replacement because her knee's unstable makes – well is unstable because of this small fracture, makes no sense at all. And, in my opinion, he's stretching, trying to please the patient because of the situation that she's in.

Dr. Hutchison also testified that he did not "see anywhere in [Dr. Sweo's] exam where he described instability of her knee." When asked if it was possible for an avulsion fracture, as seen on the MRI, to destabilize the knee, Dr. Hutchison responded, "This avulsion fracture and this knee, no."

During cross-examination, Dr. Hutchison testified that even if the fracture had been visible on the x-rays, it would have been of no consequence because "[w]hen you have an end stage arthritic knee and you have these bone spurs which are called osteophytes around the knee, it is not unusual for one to facture at its base, or, to break off." He agreed that the fracture probably occurred as a result of the accident but testified that this particular anatomic change was "of no consequence to her knee."

Dr. Hutchison agreed that the accident may have caused an exacerbation of Employee's arthritis, testifying that "it is a very common situation where someone has an accident, and their knee arthritis begins to hurt worse." Dr. Hutchison testified that both he and Dr. Sweo provided the same initial diagnosis. Dr. Hutchison acknowledged that Employee's symptoms, including pain, were consistent with someone who has an arthritic knee and was involved in an accident that causes an exacerbation of underlying symptoms, stating "since I don't have the history to say and know for certain that she did or did not have symptoms prior to the accident, I can't – I can't make that determination." However, Dr. Hutchison testified that the accident was not greater than fifty percent of the cause of Employee's end stage arthritis and did not result in permanent and

8

documented anatomical change in her knee, stating that "[t]he arthritis is greater than 51 percent of the cause for the need of a [knee] replacement" even assuming Employee was asymptomatic prior to the accident.

Dr. Sweo is a board-eligible orthopedic surgeon who has practiced in the field of orthopedics for approximately 25 years. He first treated Employee on September 24, 2020, approximately ten days after Dr. Hutchison. Dr. Sweo testified that Employee "was complaining of her knees . . . [and] said that it had been going on for a few months." Employee had stiffness of the knees, pain with motion, and mild swelling, and Dr. Sweo noted her range of motion was "much less motion than normal." He testified that "[p]retty much everything was normal other than arthritis in her knees," adding that "[h]er x-rays initially looked like just severe arthritis of the knees." Dr. Sweo recommended knee replacements and testified that "[Employee] hadn't decided what she wanted to do at that point, but that's what I recommended to her."[6]

Employee returned to Dr. Sweo on November 17. Dr. Sweo testified Employee was "adamant at that point that she hadn't had any pain in her knees prior to this motor vehicle accident she had that previous summer." Dr. Sweo ordered an MRI, which revealed a "[s]ignificant arthritic change with possible ligament damage or non-displaced fracture." Dr. Sweo acknowledged that the MRI findings were "pretty much as expected: severe arthritis throughout her knee," adding that Employee "did have a fracture of her knee, which I did not expect." He explained that the fracture was to the posterior tibial plateau, which is the "back inside bone of the knee." Dr. Sweo stated that the fracture "certainly fit with [Employee's] history." Although Dr. Sweo agreed that the fracture was incidental "as far as treatment," he attributed "more than 51% of the cause" of Employee's problems in both knees and the need for total knee replacements to the accident.

Dr. Sweo performed a left total knee replacement on February 8, 2021. He testified that Employee had severe arthritis and would likely have needed a knee replacement at some point but added that "because of the accident she had a fractured bone that didn't heal." When questioned, Dr. Sweo agreed that the accident and fractured bone were the cause of Employee's knee problems and the surgery he had to perform.

According to Dr. Sweo, in May 2021, Employee started to realize how much her right knee hurt and expressed her desire to proceed with a right total knee replacement. He opined that the condition of Employee's right knee required surgery as a result of the automobile accident. Specifically, he agreed that, in light of the diagnostic studies, if the accident involved Employee's hitting both knees on the dash "to the point that it broke

---

[6] There is no reference to a motor vehicle accident in the medical records of Employee's first visit with Dr. Sweo. When questioned about this omission, Dr. Sweo testified that the accident either "wasn't mentioned to us or I just failed to put it in there."

9

the steering column on the truck," the accident would have caused an anatomic change in her knees.[7]  When asked to explain how the trauma impacted Employee's right knee, Dr. Sweo responded that he would "probably get an MRI of [the right knee] to see if she has a fracture on that one, too, but it really won't change what she needs.  She needs the knee replacement either way."  Dr. Sweo agreed that someone could have severe arthritis, be asymptomatic, and still work as a truck driver; however, he testified that Employee "had very severe arthritis, and the fact that she tells me it doesn't hurt, didn't hurt her at all, it's hard to believe."

In determining whether Employee suffered an aggravation or exacerbation of a pre-existing condition, the trial court noted that Dr. Hutchison incorrectly stated that an exacerbation of a pre-existing condition is not compensable and should not be treated under workers' compensation.[8]  Dr. Hutchison testified that Employee's "complaints were consistent with someone who has an accident that causes an exacerbation of underlying symptoms."  He noted "it is a very common situation where someone has an accident, and their knee arthritis begins to hurt worse."  In fact, Dr. Hutchison provided an injection in an effort to relieve Employee's knee pain and treat the aggravation of Employee's left knee.  Considering Employee's testimony and that of Dr. Hutchison and Dr. Sweo, we conclude the preponderance of the lay and expert proof supports the trial court's determination that Employee is likely to prevail at trial in proving her need for medical care to treat the aggravation of her pre-existing condition arose primarily from the August 14, 2020 work injury.  However, that does not end our inquiry.  We must also address whether Employee came forward with sufficient evidence to show she is likely to prevail at trial in proving her need for bilateral total knee replacements was primarily caused by the work accident.

When a dispute centers on a request for medical treatment, the burden at an expedited hearing is on the employee to show he or she is likely to prevail at trial in proving that the work injury "contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes."  Tenn. Code Ann. § 50-6-102(14)(C).  Both Dr. Hutchison and Dr. Sweo examined Employee, reviewed the same diagnostic imaging, and provided the same diagnosis during Employee's initial visits.  The medical records reflect that Dr. Hutchison was provided a history of Employee's truck accident during her first visit; however, Dr. Sweo's medical records contain no

---

[7] When this issue was discussed at trial, Employee admitted that the steering column did *not* break as a result of her knees striking the dash during the accident.

[8] An aggravation of a pre-existing condition is compensable if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of the employment," meaning the employment contributed more than 50% in causing the aggravation."  Tenn. Code Ann. § 50-6-102(14)(A)-(B).  The phrase "[s]hown to a reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not, considering all causes, as opposed to speculation or possibility."  Tenn. Code Ann. § 50-6-102(D).

mention of the accident or an acute incident that could have caused Employee's injury. In fact, Dr. Sweo testified that Employee reported a history of pain "for months."

In addition, both doctors reviewed the December 3 MRI of Employee's left knee. Dr. Hutchison opined that the avulsion fracture did not destabilize Employee's knee and "was of no consequence to her knee." He testified that the accident was not greater than 51 percent the cause of Employee's end stage arthritis, did not result in permanent and documented anatomical change of her knee, and he opined that "[t]he arthritis is greater than 51 percent of the cause for the need of a [knee] replacement," even assuming Employee was asymptomatic prior to the accident. His opinions on these issues are entitled to a statutory presumption of correctness.

Dr. Sweo testified that the avulsion fracture caused "instability" to Employee's right knee, but Dr. Hutchison testified that Dr. Sweo's opinion regarding instability of the knee was unsupported by Dr. Sweo's physical examinations, noting that nowhere in Dr. Sweo's medical notes or operative report is "instability of the knee" described. In addition, Dr. Sweo recommended a total right knee replacement despite the fact that an MRI of Employee's right knee had not yet been obtained. When questioned as to his treatment of Employee's right knee, Dr. Sweo testified that he would "probably get an MRI of that [knee] to see if [Employee] has a fracture on that one, too." Dr. Sweo testified that he would likely find similar results on the MRI and the need for a right total knee replacement is "most likely" the result of Employee's motor vehicle accident.

Based on our review of the documentary evidence and lay testimony, we conclude the trial court erred in its analysis of the proof regarding whether Employee came forward with sufficient evidence to show a likelihood of prevailing at trial regarding the need for bilateral total knee replacements. It is undisputed that the objective studies revealed end-stage tricompartmental arthritis in both knees during Employee's initial visit with both doctors. Dr. Hutchison explained why the avulsion fracture in Employee's left knee could not cause "instability" in the knee and was not a medically significant finding. In contrast, Dr. Sweo did not explain how, in comparing the pre-existing end-stage tricompartmental arthritis to the work accident, it was the work accident that caused more than fifty percent of the need for bilateral total knee replacements.

The trial court determined that the facts of this case were analogous to *Blevins*, 2019 TN Wrk. Comp App. Bd. LEXIS 29, in which we found the authorized physician's opinion had been successfully rebutted based, in part, on the physician's misunderstanding of the law. In that case, the authorized physician's causation opinion was given little weight because his statements concerning causation were inconsistent with Employee's testimony regarding how the injury occurred and were in response to inquiries that incorrectly characterized the relevant legal questions regarding causation. Here, although the authorized physician incorrectly stated his understanding of the law as it applies to the aggravation of pre-existing conditions, his testimony nevertheless

11

supports the conclusion that the need for bilateral total knee replacements was not caused primarily by the work accident.

Based upon our review of the record, we conclude the trial court did not err in determining Employee is likely to prevail in establishing a compensable aggravation of her pre-existing condition. However, we further conclude that the proof is insufficient to show a likelihood of prevailing at trial in proving that the need for bilateral total knee replacements was primarily caused by the work accident.

Finally, Employer contends Employee was not justified in seeking unauthorized medical care after selecting Dr. Hutchison as her treating physician. It asserts Employee "simply disagreed" with Dr. Hutchison and decided to undergo "significant knee surgery" with an unauthorized provider without consulting with Employer. Employer emphasizes that it did not deny Employee's claim or delay authorization of treatment. Moreover, Employer notes that Dr. Hutchison testified Employee could return to see him as needed and that there is no evidence he failed to provide appropriate medical treatment. We conclude the preponderance of the evidence does not support a determination that Employee will likely prevail at trial in establishing Employer is responsible for payment of unauthorized treatment for those conditions at this stage of the case.

## Conclusion

For the foregoing reasons, we affirm the trial court's conclusion that Employee is likely to prevail at trial in establishing she suffered a compensable aggravation of a pre-existing condition. Thus, she is entitled to reasonable and necessary medical care with Dr. Hutchison for that aggravation. However, we reverse the trial court's finding that Employee is likely to prevail at trial in establishing her need for bilateral knee replacements arose primarily from her work injury. Accordingly, we reverse the portions of the trial court's order requiring Employer to pay past medical expenses and mileage expenses incurred as a result of the left knee replacement. In addition, we reverse the trial court's order requiring Employer to authorize and pay for Employee's right knee replacement, to pay temporary disability benefits associated with the left knee replacement, and to authorize further treatment as recommended by Dr. Sweo. The case is remanded to the trial court. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | | |
|---|---|---|---|
| Jo Carol Edwards | ) | Docket No. 2020-07-0656 | |
| | ) | | |
| v. | ) | State File No. 53020-2020 | |
| | ) | | |
| PeopLease, LLC, et al. | ) | | |
| | ) | | |
| | ) | | |
| Appeal from the Court of Workers' | ) | | |
| Compensation Claims | ) | | |
| Allen Phillips, Judge | ) | | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 18th day of March, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Stephen B. Morton | | | | X | stephen.morton@mgclaw.com |
| Charles L. Hicks | | | | X | office@hickslawfirm.net assistant@hickslawfirm.net |
| Art D. Wells | | | | X | art.wells@tn.gov |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov